UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

PAUL A. SINICKI, JUNE A. SINICKI, GERALD
J. SKIFF, BARBARA L. COMORSKI, Individually
and as Executor of the Estate of STEPHEN J.
COMORSKI, Deceased, and DONNA M. WILT,
Individually and as Administratrix of the Estate of
DAVID R. WILT, Deceased.

                                        Plaintiffs,

            v.                                          1:05-CV-508

GENERAL ELECTRIC COMPANY and NEW YORK
STATE ENERGY RESEARCH & DEVELOPMENT
AUTHORITY,

                                        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**Appearances:**                        **Of Counsel:**

Meiselman, Denlea Law Firm              Jeffrey Ian Carton, Esq.
P.O. Box 5057
1311 Mamaroneck Avenue
White Plains, NY 10602
*Attorneys for Plaintiffs*

Bond, Schoeneck Law Firm                Arthur J. Siegel, Esq.
111 Washington Avenue                   Stuart F. Klein, Esq.
Albany, NY 12210-2280
*Attorneys for Defendant General Electric Company*

THOMAS J. McAVOY
Senior United States District Judge

<u>**MEMORANDUM - DECISION and ORDER**</u>

**I.      INTRODUCTION**

            Plaintiffs commenced the instant action in state court asserting various causes of

action arising out personal injuries sustained by them from an explosion at the Malta Test

Station.  Defendants' removed the matter to this Court invoking federal question jurisdiction. Presently before the Court is Plaintiffs' motion to remand this matter to state court.

## II.    FACTS

The Malta Test Station ("MTS") was developed in 1945 by the United States Department of War (now the Department of Defense) for the development and testing of rockets.  Defendant General Electric ("GE") operated the MTS from 1945 to 1964 as a contractor to the United States.  GE tested ordnance and rockets, which included exotic rocket fuels.  On the grounds of the MTS is Pit No. 3.  Pit No. 3 consists of a rocket test stand and stainless steel tanks used to store rocket fuel and other combustible substances.

In 1964, the MTS was acquired by the New York State Energy Research & Development Authority ("NYSERDA").  Notwithstanding the change in ownership of the site, GE continued to operate on the site.  In 1984, NYSERDA sold much of the MTS to Wright Malta Corporation.  In 1996, NYSERDA sold the remaining portions of the MTS to Wright Malta Corporation.

On May 17, 2004, Plaintiffs, employees of Wright Malta Corporation, were dismantling Pit No. 3 for scrap metal.  While cutting some metal with an acetylene torch, an explosion occurred, causing injuries to Plaintiffs.  It was later discovered that the tank into which the sparks from the use of the acetylene torch flew contained approximately fifty gallons of a combustible liquid believed to be the rocket fuel earlier used by GE to test rockets.

Plaintiffs then commenced the instant action in state court asserting various causes of action.  Defendants removed the matter to this Court invoking federal question jurisdiction.

Presently before the Court is Plaintiffs' motion to remand the action to state court and seeking costs and attorneys' fees.

**III.    DISCUSSION**

Pursuant to U.S. Const. art I, sec. 8, cl. 17, the United States has exclusive authority over "all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings." "Such places are deemed 'federal enclaves' within which the United States has exclusive jurisdiction." Akin v. Ashland Chem. Co., 156 F.3d 1030 (10th Cir. 1998). "Personal injury actions which arise from incidents occurring in federal enclaves may be removed to federal district court as a part of federal question jurisdiction." Id; Mater v. Holly, 200 F.2d 123, 125 (5th Cir. 1952); see also 16 U.S.C. § 457 (providing jurisdiction for actions for death or personal injury within a place of exclusive federal jurisdiction).

Plaintiffs argue that this case should be remanded to state court because there is no diversity among the parties, all of Plaintiffs' causes of action arise under state law, and there are no claims brought against the United States or any of its officers or employees. Plaintiffs also note that any federal control over the land ended more than forty years ago and that the injury occurred in 2004. Defendant GE, on the other hand, contends that some of the actions giving rise to Plaintiff's claim (the storage of the fuel and the failure to remove it) occurred, at least in part, while the property was owned by the United States and, thus, enclave jurisdiction is appropriate.

As an initial matter, the Court finds that GE has failed to establish that the MTS was, in fact, a federal enclave. Under the plain terms of U.S. Const. art I, sec. 8, cl. 17, the United States has exclusive authority over "all Places purchased by the Consent of the

Legislature of the State in which the Same shall be."  GE has presented no evidence that the subject land was purchased with the Consent of the New York legislature or that the State of New York otherwise ceded the land to the United States.  Rather, the evidence before the Court is that the MTS was acquired by the United States through eminent domain.  See MacKay v. State of New York, 348 N.Y.S.2d 818, 819 (Sup. Ct. Saratoga County 1973), aff'd, 45 A.D.2d 900 (3d Dep't 1974).  This is insufficient to establish that the MTS is a federal enclave.  As the Supreme Court clearly stated, "in order that the United States may possess exclusive legislative power over the tract . . ., they must have acquired the tract by purchase, with the consent of the state.  This is the only mode prescribed by the federal constitution for their acquisition of exclusive legislative power over it." Chicago, R. I. & P. Ry. Co. v. McGlinn, 114 U.S. 542, 545 (1885).  The fact that Plaintiffs may not have disputed the MTS's status as a federal enclave is of no moment.  Regardless of Plaintiffs' position on the issue, if the MTS is not a federal enclave, there is no subject matter jurisdiction.  Thus, GE has failed to demonstrate that the MTS is a federal enclave and this matter must be remanded to state court.

Even assuming that the MTS is a federal enclave, for the following reasons, the Court finds that it lacks subject matter jurisdiction.

The parties have not cited, and the Court has not found, any case dealing with the precise issue of whether enclave jurisdiction is appropriate where any alleged breach of duty occurred while the property was a federal enclave, but the event causing the injury did not occur until long after the property ceased to be a federal enclave.  The most analogous cases involve toxic torts.  In those cases, enclave jurisdiction was found to be appropriate because, even though the injury did not manifest itself until much later, the plaintiff was

exposed to toxins while working on a federal enclave.  See Reed. v. Fina Oil & Chem. Co., 995 F. Supp. 705, 713 (E.D. Tex. 1998); see also Aiken v. Big Three Indus., Inc., 851 F. Supp. 819, 822 (E.D. Tex. 1994).  Importantly, in the toxic tort cases, all the elements giving rise to the cause of action, including the event(s) causing the injuries, transpired while the property was a federal enclave.  Although the injuries in those cases may not have manifested themselves until much later, the exposure that caused the injuries occurred on the federal enclave.  This case is different from the toxic tort cases because Plaintiffs never worked on a federal enclave, Plaintiffs did not work for a company that contracted to perform work on a federal enclave, Plaintiffs were never exposed to any rocket fuel while the territory was a federal enclave, the event that caused the injuries did not occur while the property was a federal enclave, and Plaintiffs did not sustain any injuries while the property was a federal enclave.

Looking back on the history, development and purpose of federal enclave jurisdiction, the Court finds that the exercise of such jurisdiction is not appropriate in this case.  Enclave jurisdiction developed from the need to provide a source of law to claims for personal injuries sustained on land that was ceded by one sovereign (*e.g.*, a state) to the exclusive jurisdiction of another sovereign (*e.g.*, the United States).  See Mater v. Holley, 200 F. 2d 123 (5th Cir. 1952); see also Stokes v. Adair, 265 F.2d 662, 664 (4th Cir. 1959).  Once the source of law was identified, it was then necessary to ascertain which courts had jurisdiction over such claims.  In Mater, the Fifth Circuit noted "the rule to be that when legislative power over territory is transferred from one sovereign to another, the then existing laws of the surrendering sovereign for the protection of private rights, so far as consistent with the laws of the new sovereign, continue in force until abrogated or altered by the new

sovereign." Id. at 124 (citing Chicago, Rock Island & Pacific Ry. Co. v. McGlinn, 114 U.S. 542). The purpose of this rule was to prevent a legal void on the ceded territory. If the law of the surrendering sovereign did not continue to apply, there would be no rule of law governing private rights on the ceded territory until the new sovereign acted to fill the void. Stokes, 265 F.2d at 665. Once the territory is ceded, the surrendering sovereign loses authority over the territory and the new sovereign has exclusive authority. Thus, the law applicable to private actions on such ceded land is deemed to be the law of the new sovereign, even though the source of that law came from the surrendering sovereign. See Stokes, 265 F.2d at 664 ("[A]lthough the laws of the states governing private rights of individuals persist in the ceded territories, they do not derive their authority from the state but from the federal government which has acquired exclusive legislative jurisdiction."); Mater, 200 F.2d at 124 (when a state cedes land to the United States, "any law existing in territory over which the United States has 'exclusive' sovereignty must derive its authority and force from the United States and is for that reason federal law, even though having its origin in the law of the state within the exterior boundaries of which the federal area is situate."). Accordingly, in Mater, which involved land ceded by the State of Georgia to the United States, the Fifth Circuit stated that "[w]hen . . . this area was ceded by Georgia to the United States, Georgia law as such, and by virtue of Georgia sovereignty ceased to exist, but remained operative as federal law by virtue of the sovereignty of the United States." Id; see also Stokes, 265 F.2d at 664 ("In effect, the acceptance of jurisdiction over the ceded territory is tantamount to an adoption of the existing state laws by the federal government."). Because the source of law became that of the United States and not of the State of Georgia, the Fifth Circuit found that the federal courts had jurisdiction over claims for personal injuries sustained on federal property. The

same result was had in <u>Stokes</u>.  The <u>Mater</u> court stated that "[i]t would be incongruous to hold that although the United States has exclusive sovereignty in the area here involved, its courts are without power to adjudicate controversies arising there."  <u>Id</u>.  In essence, then, federal enclave jurisdiction is not its own source of federal jurisdiction, but a subset of federal question jurisdiction under 28 U.S.C. § 1331.  <u>See Ivy Broadcasting Co. v. Am. Tel & Tel. Co.</u>, 391 F.2d 486, 492 (2d Cir. 1968).  Stated otherwise, if the source of law is federal law, then a federal question is presented and the federal courts have concurrent jurisdiction over the claims.  <u>Id</u>. ("We believe that a cause of action . . . 'arises under' federal law if the dispositive issues stated in the complaint require the application of federal common law.").

In this case, the explosion that caused the injuries at issue occurred in 2004.  It was at this time, and not before, that Plaintiffs' causes of action accrued.  At that time, the land was not within the exclusive jurisdiction of the United States.  Rather, the United States had long since sold the land.  Accordingly, absent any evidence that the United States retained exclusive jurisdiction over the territory when it was sold to NYSERDA and then resold to Wright Malta Corporation (of which, none has been presented), New York law (and not that of the United States) provides the source for Plaintiffs' claims.  Although GE argues that any breach of duty attributable to it occurred when the property was a federal enclave, the fact remains that Plaintiffs' causes of action did not accrue until the date of the explosion, long after any exercise of federal jurisdiction over the land had terminated.  The Court must look to the law in effect at the time the cause of action accrues.  <u>See Pratt v. Kelly</u>, 585 F.2d 692, 695 (4th Cir. 1978) ("[T]he law of the place where the event giving rise to cause of action occurred will provide the substantive legal basis for a decision of the case."); <u>see also Ganess v. City of New York</u>, 207 A.D.2d 765, 767 (2d Dep't 1994) (courts must apply the law

in effect at the time the cause of action accrues), aff'd, 85 N.Y.2d 733 (1995); Baptiste v. Riverdale Transit Corp., 104 A.D.2d 839 (2d Dep't 1984) (same).  Because New York law governs, there is no federal source for Plaintiffs' claims and, accordingly, no basis for federal subject matter jurisdiction.

**IV.      CONCLUSION**

For the foregoing reasons, Plaintiffs' motion to remand is GRANTED.  Plaintiffs' application for costs and fees is DENIED.

IT IS SO ORDERED.

Dated:    July 7, 2005

Thomas J. McAvoy
Senior, U.S. District Judge